STATE of Tennessee,
Appellee/Appellant,

v.

David Patrick PEARSON,
Appellant/Appellee.

Supreme Court of Tennessee,
at Knoxville.

June 14, 1993.

Kenneth F. Irvine, Jr., Ritchie, Fels & Dillard, P.C., Knoxville, for appellant/appellee, David Patrick Pearson.

Charles W. Burson, Atty. Gen. & Reporter and Rebecca L. Gundt, Asst. Atty. Gen., Nashville, for appellee/appellant, State.

## OPINION

ANDERSON, Justice.

We granted this application to resolve questions which arose out of the sentencing of the defendant, David Patrick Pearson, after he pled guilty to thirteen criminal offenses. The first was whether the trial court's application of an enhancement factor—created by the 1989 Sentencing Act—to a criminal offense occurring before the Act's effective date violated the ex post facto prohibition of the United States and Tennessee Constitutions. The second issue raised was whether the Court of Criminal Appeals' sua sponte application of an enhancement factor to the sentence, which was not found by the trial court, violated the defendant's right to procedural due process by depriving him of notice and an opportunity to be heard. The final question was whether the Court of Criminal Appeals erred by dismissing the defendant's misdemeanor conviction on the grounds that the trial court lacked subject matter jurisdiction because the statute of limitations had expired.

We have decided that the prohibition against ex post facto laws in both the United States and the Tennessee Constitutions is satisfied by determining whether the defendant will be disadvantaged by application of the 1989 Sentencing Act. We conclude that a trial court imposing a sentence after the effective date of the 1989 statute for a crime committed before that date must calculate the appropriate sentence under both the 1982 sentencing statute and the 1989 Criminal Sentencing Reform Act, and then impose the lesser sentence of the two. We, therefore, remand the conviction of first-degree burglary to the trial court for that purpose.

We have also determined that additional notice and a further opportunity to be heard were not required in this case, where the Court of Criminal Appeals determined without remand that the trial record supports an enhancement factor not found by the trial court at the sentencing hearing.

Finally, we conclude that the statute of limitations may be waived by a defendant,

where the waiver is knowing and voluntary. Here, there is no evidence in the record that the defendant was made aware of the issue and, therefore, there could be no knowing and voluntary waiver. Accordingly, we affirm the judgment of the Court of Criminal Appeals dismissing the conviction for the 1989 assault on the separate grounds stated.

## BACKGROUND

The defendant, David Patrick Pearson, pled guilty on September 26, 1990, to eleven counts of aggravated burglary, aggravated rape, assault, and theft which occurred in 1990. On November 15, 1990, a sentencing hearing was held for these eleven offenses. At that time, the State filed an information charging the defendant with two additional offenses—first-degree burglary and assault—which occurred on March 31, 1989, to which the defendant also pled guilty. At the sentencing hearing, the trial court applied to the March 1989 convictions an enhancement factor which was created by the 1989 Criminal Sentencing Reform Act—Tenn.Code Ann. § 40–35–114(11). The Act, however, did not take effect until November 1, 1989. The enhancement factor applied provided that "[d]uring the commission of the felony, the defendant willfully inflicted bodily injury upon another person." The trial court then sentenced the defendant to six years for the first-degree burglary, which was the maximum sentence under the 1989 Act. In contrast, the 1982 Act provided a sentence range of a minimum of five years and a maximum of fifteen years. The trial court also sentenced the defendant to eleven months and twenty-nine days for the assault. The aggregate sentence for all offenses was eighty years.

On appeal, a majority of the Court of Criminal Appeals panel, in a split opinion, found that application of an enhancement factor created by the 1989 Act to an offense occurring before the effective date of the statute, violates the ex post facto prohibition of the United States and Tennessee Constitutions. The writer of the opinion

found no violation, but for other reasons reduced the six-year sentence for first-degree burglary to five years. Of the two-judge majority who found a violation, one thought a sentence reduction for first-degree burglary from six to five years an appropriate remedy, while the other would have further reduced the sentence to four years.

With respect to the 1990 offenses, the Court of Criminal Appeals also held that the trial court erred in applying the mitigating factor of "no prior conviction." Reviewing the record de novo, the appellate court applied to all eleven 1990 offenses the enhancement factor found in the 1989 Act—Tenn.Code Ann. § 40–35–114(1)—which provides that "[t]he defendant has a previous history of criminal convictions or criminal behavior in addition to those necessary to establish the appropriate range"[1].

Finally, the Court of Criminal Appeals dismissed the defendant's conviction on the 1989 assault charge, holding that because the misdemeanor offense occurred more than nineteen months before the information was filed and the statute of limitations for misdemeanors is twelve months, the trial court did not have subject matter jurisdiction. The effect of the adjustments made by the Court of Criminal Appeals reduced the aggregate sentence for all offenses from eighty to seventy-seven years. Both the State and the defendant have appealed.

## EX POST FACTO

Only nine years after the adoption of the U.S. Constitution, the Supreme Court considered the meaning of the term "ex post facto" as used in Article I, § 10, cl. 1, of the U.S. Constitution, which provides that "[n]o state shall ... pass any ... ex post facto law...." In *Calder v. Bull,* 3 U.S. (3 Dall.) 386, 1 L.Ed. 648 (1798), the Supreme Court concluded that the ex post facto clause prohibits:

1st. Every law that makes an action done before the passing of the law and which was innocent when done, criminal;

---

1. Tenn.Code Ann. § 40–35–114(1) (1990 & Supp. 1992).

and punishes such action. 2d. Every law that aggravates a crime, or makes it greater than it was, when committed. 3d. Every law that changes the punishment and inflicts a greater punishment, than the law annexed to the crime, when committed.

3 U.S. at 390, 1 L.Ed. 648. Much more recently, the Supreme Court has stated that two critical elements must be present for a law to fall within the prohibition. First, it "must be retrospective, that is, it must apply to events occurring before its enactment"; and second, "it must disadvantage the offender affected by it." *Miller v. Florida*, 482 U.S. 423, 430, 107 S.Ct. 2446, 2451, 96 L.Ed.2d 351 (1987) (quoting *Weaver v. Graham*, 450 U.S. 24, 29, 101 S.Ct. 960, 964, 67 L.Ed.2d 17 (1981)).

The Tennessee Constitution's ex post facto prohibition found in Article I, § 11, provides:

That laws made for the punishment of acts committed previous to the existence of such laws, and by them only declared criminal are contrary to the principles of a free Government; wherefore no Ex post facto law shall be made.

The leading case interpreting the prohibition is *Miller v. State*, 584 S.W.2d 758 (Tenn.1979), in which this Court adopted five broad classifications of ex post facto laws, four of which were derived from *Calder, supra*. The classifications are as follows:

1. A law which provides for the infliction of punishment upon a person for an act done which, when it was committed, was innocent.

2. A law which aggravates a crime or makes it greater than when it was committed.

3. A law that changes punishment or inflicts a greater punishment than the law annexed to the crime when it was committed.

4. A law that changes the rules of evidence and receives (sic) less or different testimony than was required at the time of the commission of the offense in order to convict the offender.

5. Every law which, in relation to the offense or its consequences, alters the situation of a person to his disadvantage. *Miller*, 584 S.W.2d at 761.

In *Miller*, the defendant was tried and sentenced for a crime committed on April 7, 1976, under a death penalty statute which become effective on April 11, 1977. He challenged his conviction and sentence of death by electrocution as a violation of the ex post facto prohibition of the U.S. Constitution. The defendant argued that because the mandatory death penalty contained in the Tennessee statutes at the time the murder was committed was unconstitutional, it could not be enforced; and, therefore, the prior valid statute prescribing only life imprisonment was left in full force and effect. The U.S. Supreme Court had rejected the same argument in a factually identical case, *Dobbert v. Florida*, 432 U.S. 282, 97 S.Ct. 2290, 53 L.Ed.2d 344 (1977), holding that an unconstitutional statute is not void from its enactment, and therefore, the proper comparison, for ex post facto purposes, is between the quantum of punishment imposed under the unconstitutional law and the quantum of punishment imposed by the later-enacted provision.

This Court in *Miller*, however, agreed with the defendant that an unconstitutional law is void from its enactment, and as such, leaves any prior valid statutes in full force and effect. At the time the offense occurred, the only valid, applicable statute prescribed life imprisonment as the maximum punishment. Imposition of the death penalty under the 1977 death penalty statute would have imposed a greater punishment than was possible at the time the offense occurred, and it would have obviously altered the defendant's situation to his disadvantage. As a result, we held that the ex post facto prohibition of the Tennessee Constitution prevented imposition of the death penalty under the 1977 statute. *Miller*, 584 S.W.2d at 762. In so holding, we stated that Tennessee's ex post facto provision "is sufficiently broad to proscribe application of a statute fixing punishment in excess of that provided by a law in effect at the time of the commission of an offense." *Miller*, 584 S.W.2d at 761; *see*

*also Boykins v. State,* 584 S.W.2d 194, 196 (Tenn.1979) (denying probation based on a new statutory standard for an offense committed prior to passage of the statutory standard amounts to prohibited ex post facto legislation).

 Accordingly, in determining whether an ex post facto violation exists in the context of sentencing, the critical question under both the United States and Tennessee Constitutions is whether the law changes the punishment to the defendant's disadvantage, or inflicts a greater punishment than the law allowed when the offense occurred. The determination is made by comparing the standard of punishment prescribed by each statute, rather than the punishment actually imposed. *See Lindsey v. Washington,* 301 U.S. 397, 57 S.Ct. 797, 81 L.Ed. 1182 (1937); *Stinson v. State,* 208 Tenn. 159, 344 S.W.2d 369 (1961). Applying a law that inflicts the same or a lesser punishment raises no ex post facto concerns. *See State v. Whiddon,* 554 So.2d 651, 653 (Fla.App. 1 Dist.1989); *Williams v. State,* 525 So.2d 458, 460 (Fla.App. 2 Dist.1988).

Returning to the facts of this case, Pearson committed the offense of first-degree burglary on March 31, 1989. The trial court sentenced Pearson pursuant to the 1989 Sentencing Act, which became effective on November 1, 1989, rather than the 1982 Act, which was in effect at the time of the commission of the offense. According to Tenn.Code Ann. § 39–11–112 (1991), when a statute is repealed, any offense committed while the statute was in effect shall be prosecuted under the statute in effect at the time of the commission of the offense. If, however, the later Act provides for a lesser penalty, the punishment imposed is under the later Act. The single exception to the lesser penalty rule is set out in Tenn.Code Ann. § 40–35–117(b), which specifically directs that:

> [u]nless prohibited by the United States or Tennessee constitution, any person sentenced on or after November 1, 1989, for an offense committed between July 1, 1982 and November 1, 1989, shall be sentenced under the provisions of this chapter [the 1989 Statute].

First-degree burglary under the 1982 statute required a sentence of five (5) to fifteen (15) years.[2] Under the 1989 statute, first-degree burglary is classified as a Class C felony and results in a range of punishment from three (3) to six (6) years. *See* Tenn.Code Ann. § 40–35–112(a)(3) (1990) and Tenn.Code Ann. § 40–35–118 (1990 & Supp.1992).

The defendant does not claim that he should have been sentenced under the 1982 Act. Instead he argues that the trial court should have applied the more favorable sentence range of the 1989 statute, but not the additional enhancement factor. He contends that the trial court's application of an enhancement factor not in existence at the time the offense occurred is an ex post facto violation, and the Court of Criminal Appeals erred in not reducing his sentence on that basis. In contrast, the State argues that the trial court should determine the appropriate sentence under each Statute, in its entirety, and then impose the lesser sentence of the two.

The California Supreme Court faced a similar issue in the context of a parole release date. There, the defendant had been sentenced under the Indeterminate Sentence Law, but his parole release date was set by reference to standards enacted as part of a later law, the Uniform Determinate Sentencing Act of 1976. *In re Stanworth,* 33 Cal.3d 176, 187 Cal.Rptr. 783, 654 P.2d 1311 (1982). Standards under the earlier law focused on individual rehabilitation, while the newer standards focused on the nature of the crime and uniformity of punishment among those committing similar crimes. *Id.* 187 Cal.Rptr. at 784, 654 P.2d at 1312. The new standards set a longer range of base terms for first degree murder and required the imposition of set additional terms for specific enhancements unless deviation was expressly justified. Criminal activities were stressed under the new scheme rather than the social or personal factors stressed by the old

---

**2.** Tenn.Code Ann. § 39–3–401(b) (1982) (Repealed 1989).

scheme. Finally, the new standards were more directory, whereas the earlier guidelines were largely discretionary. *Id.* 187 Cal.Rptr. at 791, 654 P.2d at 1318. The California Supreme Court determined that the critical inquiry for ex post facto purposes is whether the standards have been altered to the defendant's detriment by postponing his release date. *Id.* The court ordered that the defendant be considered for parole release under both standards and given the earlier release date, if any, set pursuant to both standards. *Id.* 187 Cal.Rptr. at 791, 654 P.2d at 1319; *see also Chatman v. Marquez*, 754 F.2d 1531 (9th Cir.1985) (applying California law).

■ Here, as in the California case, the critical inquiry for ex post facto purposes is whether the defendant will be disadvantaged by application of the 1989 statute. A comparison of the two statutory sentencing schemes in their entirety is necessary to determine if the 1989 statute may be fairly characterized as disadvantageous to the defendant. *See Dobbert, supra* 432 U.S. at 295, 97 S.Ct. at 2299. This record does not reveal what sentence would have been imposed if the 1982 statute had been applied in its entirety. Accordingly, we conclude that in order to comply with the ex post facto prohibitions of the U.S. and Tennessee Constitutions, trial court judges imposing sentences after the effective date of the 1989 statute, for crimes committed prior thereto, must calculate the appropriate sentence under both the 1982 statute and the 1989 statute, in their entirety, and then impose the lesser sentence of the two. The practice of commingling the two laws and allowing the defendant the benefit of the most favorable provisions of each is confusing, and, as the State points out, could result in the defendant receiving a lesser sentence than is authorized by either Act in its entirety. The prohibition against ex post facto laws in both the United States

and the Tennessee Constitutions is satisfied by determining the appropriate sentence under each statute and imposing the lesser of the two sentences. We therefore remand the conviction of first-degree burglary to the trial court for resentencing consistent with this Opinion.

### *PROCEDURAL DUE PROCESS*

■ A "fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950); *see also Matthews v. Eldridge*, 424 U.S. 319, 333, 96 S.Ct. 893, 902, 47 L.Ed.2d 18 (1976) (the fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner); *In re Riggs*, 612 S.W.2d 461, 465 (Tenn.App.1980) (notice and opportunity to be heard are the minimal requirements of due process).

■ In this case, the Court of Criminal Appeals found that the trial court erred in applying the mitigating factor of no prior criminal record, and held, instead, that the enhancement factor of "[t]he defendant has a previous history of criminal convictions or criminal behavior in addition to those necessary to establish the appropriate range," [3] applied to all eleven of the 1990 offenses. The defendant concedes that the sentencing statute does not make notice of the applicable enhancement factors mandatory,[4] but he asserts that due process requires a remand to the trial court for a further hearing if an appellate court determines the record supports an additional enhancement factor not relied upon by the State, nor applied by the trial court, at the sentencing hearing.

---

3. Tenn.Code Ann. § 40–35–114(1) (1990 & Supp. 1992).

4. In all cases following a finding of guilt, the court *may* require that: (1) The district attorney general file a statement with the court setting forth any enhancement or mitigating factors he

believes should be considered by the court; and (2) The defendant file a statement with the court setting forth all mitigating factors known to him and indicating any mitigating factors he believes should be considered by the court. Tenn. Code Ann. § 40–35–202(b) (1990).

When reviewing the length, range, or manner of service of a sentence imposed pursuant to the 1989 Statute, it is the duty of an appellate court to conduct a de novo review on the record with a presumption that the determinations of the trial court are correct. Tenn.Code Ann. § 40–35–401(d) (1990). The appellate court must consider the evidence received both at the trial and at the sentencing hearing, the presentence report, statutory principles of sentencing, argument of counsel, the nature and characteristics of the offense, mitigating and statutory enhancement factors, statements made by the offender, and the potential for rehabilitation or treatment of the offender. *State v. Ashby*, 823 S.W.2d 166, 169 (Tenn.1991).

"[D]ue process is flexible and calls for such procedural protections as the particular situation demands." *Matthews*, 424 U.S. at 334, 96 S.Ct. at 902 (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552, 85 S.Ct. 1187, 1191, 14 L.Ed.2d 62 (1965)). In determining what process is due in a particular situation, three factors must be considered: (1) the private interest affected by the official action; (2) the risk of erroneous deprivation of the interest through the procedures used and the probable value, if any, of additional safeguards; and, (3) the government's interest. *Id.*, 424 U.S. at 335, 96 S.Ct. at 903.

Here, the private interest at stake is the defendant's liberty interest in minimizing his sentence. The risk of erroneous deprivation of the defendant's liberty interest as a result of the procedures employed here is at most slight, where the record is clearly developed and the defendant's own criminal record and behavior which support the enhancement factor are well known to the defendant. Moreover, notice was provided by the list of enhancement factors in the statute,[5] *State v. Beasley*, 580 So.2d 139, 142 (Fla.1991), and the defendant had an opportunity to be heard at the sentencing hearing.[6] Appellate review is *de novo* on the record compiled at the sentencing hearing, and the issue of enhancing and mitigating factors addressed by the appellate court was considered below.

In light of the minimal risk of deprivation in this case, the State's interests in efficiency and finality, as well as the interest of judicial economy, outweigh the value of the procedural safeguards proposed by the defendant which would require a remand. We suggest, however, that better practice dictates the routine utilization of Tenn.Code Ann. § 40–35–202(b) by the trial court. Its use would aid in ensuring that all enhancing and mitigating factors are before the court at the time of sentencing and would avoid circumstances where due process may require a remand.

We believe the Court of Criminal Appeals acted appropriately in setting aside the trial court's finding of the mitigating factor and finding, instead, that the record supported application of an enhancement factor not relied upon by the State or applied by the trial court. The defendant's contention is, therefore, without merit.

## STATUTE OF LIMITATIONS

The Court of Criminal Appeals dismissed the conviction for the 1989 assault holding that the trial court lacked subject matter jurisdiction to enter a conviction when the statute of limitations had expired on the underlying offense. The State argues, however, that the statute of limitations is an affirmative defense which is waived if not raised in a pre-trial motion in the trial court.

There is authority in this state to support the proposition that an accused who is indicted for an offense, which is not barred by the statute of limitations, may not be convicted of a lesser-included offense which is time barred by the statute. *See Hickey v. State*, 131 Tenn. 112, 114–15, 174 S.W. 269 (1915); *State v. Hix*, 696 S.W.2d 22, 25 (Tenn.Crim.App.1984). The issue of whether a criminal defendant may waive the stat-

---

5. Tenn.Code Ann. § 40–35–114 (1990 & Supp. 1992).

6. Tenn.Code Ann. § 40–35–209 (1990).

ute of limitations is a question of first impression.[7]

Other jurisdictions deciding the issue have followed three distinct views. *See generally* Annotation, *Waivability of Bar of Limitations Against Criminal Prosecution*, 78 A.L.R.4th 693 (1990).

First, some state courts hold that the expiration of the statute of limitations is jurisdictional and need not be raised in a pre-trial motion. *See e.g., Grayer v. State*, 234 Ark. 548, 353 S.W.2d 148 (1962) (statute of limitations is jurisdictional and bars prosecution); *People v. Chadd*, 28 Cal.3d 739, 170 Cal.Rptr. 798, 621 P.2d 837 (1981) (running of statute of limitations deprives a court of subject matter jurisdiction and may be raised for the first time on appeal); *State v. Stillwell*, 175 N.J.Super. 244, 418 A.2d 267 (1980) (statute of limitations in criminal cases is jurisdictional and may be raised at any time before or after judgment).

Second, other courts hold that the statute of limitations bar is an affirmative defense which may be waived by either the defendant's failure to raise it in a pre-trial motion or entry of a guilty plea. *See e.g., State v. Brinkley*, 193 N.C. 747, 138 S.E. 138 (1927) (defendant who pled guilty may not assert statute of limitations on appeal); *Commonwealth v. Darush*, 501 Pa. 15, 459 A.2d 727 (1983) (statute of limitations was waived by the defendant's failure to raise it in a pre-trial motion); *People v. Speller*, 46 Ill.App.3d 208, 4 Ill.Dec. 780, 360 N.E.2d 1155 (1977) (defendant's failure to raise statute of limitations by written pre-trial motion constitutes waiver); *State v. Brown*, 43 Ohio App.3d 39, 539 N.E.2d 1159 (1988) (guilty plea waived any claim to the statute of limitations as a defense).

Courts adopting the third view hold that the statute of limitations may be waived if the waiver is voluntarily, intelligently, and knowingly entered. *See e.g., United States v. Wild*, 551 F.2d 418 (D.C.Cir.), *cert. denied*, 431 U.S. 916, 97 S.Ct. 2178, 53 L.Ed.2d 226 (1977) (knowing and intelligent waiver of the statute of limitations is valid); *Padie v. State*, 594 P.2d 50 (Alaska 1979) (statute of limitations defense may be waived if the waiver is knowingly, voluntarily and intelligently entered for the benefit of the defendant after consultation with counsel, and it does not contravene public policy); *State v. Littlejohn*, 199 Conn. 631, 508 A.2d 1376 (1986) (statute of limitations can be waived by a defendant, but the waiver must be voluntary and intelligent); *State v. Muentner*, 138 Wis.2d 374, 406 N.W.2d 415 (1987) (statute of limitations goes to personal jurisdiction and may be waived by an express waiver); *Hall v. State*, 497 So.2d 1145 (Ala.Cr.App.1986) (statute of limitations may be waived if the waiver is voluntarily, knowingly and intelligently entered); *Tucker v. State*, 417 So.2d 1006 (Fla.Dist.Ct.App.1982) (statute of limitations may be waived by a voluntary, knowing and intelligent waiver); *Lowe v. State*, 14 Kan.App.2d 119, 783 P.2d 1313 (1989) (statute of limitations in a criminal case is an affirmative defense and may be waived the voluntary, knowing, and intelligent acts of the defendant).

■ The statute of limitations serves two primary purposes—to avoid the use of stale evidence and to provide an incentive for swift governmental action in criminal cases. *United States v. Ewell*, 383 U.S. 116, 122, 86 S.Ct. 773, 777, 15 L.Ed.2d 627 (1966); *Wild*, 551 F.2d at 423–24; *see also Waiver of the Statute of Limitations in Criminal Prosecutions: United States v. Wild*, 90 Harv.L.Rev. 1550, 1554 (1977). Such statutes "represent legislative assessments of relative interests of the State and the defendant in administering and receiving justice...." *United States v. Marion*, 404 U.S. 307, 322, 92 S.Ct. 455, 464, 30 L.Ed.2d 468 (1971). Since protection of the defendant is a primary purpose of the statute of limitations, the fact that a defendant may have legitimate reasons for waiving

---

7. In civil cases, a statute of limitations defense is an affirmative defense which must be raised by the party asserting the running of the statute. Rule 8.03, Tenn.R.Civ.P.; *see, e.g., Sawner v. M.P. Smith Construction Co.*, 526 S.W.2d 492, 497 (Tenn.Ct.App.1975) (defendants' failure to plead the statute of limitations denies them the right to rely thereon). The opinion expressed here is limited to the statute of limitations defense in criminal proceedings.

the statute militates strongly in favor of allowing an accused to do so, provided that there are adequate safeguards to assure that the decision is informed and voluntary.[8] 90 Harv.L.Rev. at 1555. A defendant who believes that a criminal statute of limitations no longer works to his advantage should be allowed to enter a knowing, voluntary, and intelligent waiver either pretrial or before the jury retires. *Tucker, supra,* 417 So.2d at 1013.

■■■■ Therefore, we conclude that the better reasoned rule is to treat the statute of limitations as waivable, rather than jurisdictional, but to require that the waiver be knowingly and voluntarily entered. Although the protection against prosecution provided by a statute of limitations may not rise to the level of a fundamental right, we conclude the right is sufficiently substantial to apply the same standard applied in determining whether there has been an effective waiver as to fundamental rights. *See e.g., Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) (waiver of fundamental right must be knowingly, intelligently and voluntarily made); *Johnson v. State,* 834 S.W.2d 922 (Tenn.1992) (guilty plea must be knowing and voluntary). A knowing and voluntary waiver includes the intentional relinquishment or abandonment of known rights. *See Johnson,* 834 S.W.2d at 923; *State v. Mackey,* 553 S.W.2d 337, 340 (Tenn.1977). The relinquishment of certain constitutional rights will not be presumed from a silent record. *Johnson,* 834 S.W.2d at 923, citing *Boykin v. Alabama,* 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969). Likewise, a waiver of the statute of limitations will not be presumed where there is no evidence in the record to indicate that the defendant was made aware of the issue. *See, e.g., Tucker,* 417 So.2d at 1013; *Hall,* 497 So.2d at 1148–49.

■■■ In this case, there is no evidence in the record to indicate that the defendant

entered a knowing and voluntary waiver. In fact, there was no discussion at all of the expiration of the statute of limitations in the trial court. Accordingly, we affirm the judgment of the Court of Criminal Appeals dismissing the conviction for the 1989 assault, on the separate grounds stated.

### CONCLUSION

We conclude that when a defendant is sentenced after the effective date of the Criminal Sentencing Reform Act of 1989, for an offense that occurred before that time, a trial court must calculate the applicable sentence under both the 1982 statute and the 1989 statute, in their entirety, and impose the lesser sentence of the two.

We also conclude that the statute of limitations may be waived if the waiver is knowing and voluntary. The judgment of the Court of Criminal Appeals dismissing the conviction for the 1989 misdemeanor assault is affirmed, because there is no evidence in this record that the defendant made a knowing and voluntary waiver.

This case is remanded to the trial court for resentencing consistent with this Opinion on the conviction for first-degree burglary. The judgment of the Court of Criminal Appeals is affirmed as to all the other issues raised. Costs of this appeal are taxed against the appellant, David Patrick Pearson.

REID, C.J., and DROWOTA, O'BRIEN and DAUGHTREY, JJ., concur.

---

8. A defendant might make a calculated decision to waive the statute when it is about to run in order to gain time for plea bargaining. A defendant might also waive his limitations defense in order to vindicate his good name in the face of a serious and publicly known charge that is barred by the statute. Also a defendant charged with a more serious charge which is not time barred might want to waive the shorter statute on a lesser included offense. *Padie,* 594 P.2d at 56 n. 16.