# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### September 27, 2011 Session

# STATE OF TENNESSEE v. DANIEL ROSS McCLELLAN

### Appeal from the Criminal Court for Hawkins County
### No. 07CR0247     John F. Dugger, Judge

---

### No. E2010-02338-CCA-R3-CD - Filed June 21, 2012

---

A Hawkins County jury convicted the Defendant-Appellant, Daniel Ross McClellan, of rape of a child and incest. On remand for resentencing for the rape of a child following his first direct appeal, State v. Daniel Ross McClellan, No. E2009-00698-CCA-R3-CD, 2010 WL 2695657 (Tenn. Crim. App., at Knoxville, July 8, 2010), the trial court imposed a sentence of twenty-five years. McClellan appeals the length of his sentence, arguing that the trial court violated his constitutional right to a jury trial by relying on enhancement factors that were improperly submitted to the jury. The State concedes error but maintains that McClellan's sentence is appropriate. Although we discern no reversible error, we remand to the trial court for correction of the judgment forms to reflect the date of the offense as shown in the indictment. In all other respects, the judgment of the trial court is affirmed.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court
### Affirmed and Remanded for Entry of Corrected Judgment

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which NORMA MCGEE OGLE and D. KELLY THOMAS, JR., JJ., joined.

Brian J. Wanamaker, Knoxville, Tennessee (on appeal); Gerald T. Eidson, Rogersville, Tennessee (at trial), for the Defendant-Appellant, Daniel Ross McClellan.

Robert E. Cooper, Jr., Attorney General and Reporter; Leslie E. Price, Assistant Attorney General; C. Berkeley Bell, Jr., District Attorney General; and Alex Pearson, Assistant District Attorney General, for the Appellee, State of Tennessee.

### OPINION

**Background.** On McClellan's first direct appeal, this court summarized the proof at trial and the first sentencing proceedings:

The Defendant's convictions are the result of sexual assaults committed against his daughter, S.M., the victim. The State's proof at trial established that in 1995, the victim and her three brothers lived with their grandmother, Mary Voss, in Mooresburg, and the Defendant and his wife, Voss's daughter, lived in a trailer behind the Cloud 9 fertilizer plant. On occasions in 1995 when the victim was five years old and visiting the Defendant at his trailer, the Defendant molested the victim. The incidents occurred in the bedroom and the bathroom, but primarily in the bathroom. The Defendant "would pick [the victim] up and set [her] on his shoulders and he would stick his tongue in [her] vagina" and move it around. The victim referred to her vagina as her "turtle" when she was younger.

On one occasion, when [he] was six or seven years old, one of the victim's brothers, Thomas, walked in on the Defendant molesting the victim. Thomas saw the victim lying on a bed and the Defendant "[l]icking her privates," or vagina. When the Defendant saw that Thomas was in the room, he physically kicked Thomas out of the room and out of the trailer.

Meanwhile, Voss noticed that when she bathed the victim following a visit with the Defendant, the victim said her "turtle" burned and that the area was very red and irritated. Voss became aware that something might have happened to the victim when a neighbor overheard a conversation between the victim and Voss's other granddaughter. Voss took the victim to the Department of Human Services (DHS) and also to the sheriff's department. The Defendant and his wife moved to North Carolina for a period of three years, and Voss notified the authorities immediately upon the Defendant's return to Hawkins County.

The State presented evidence that the sheriff's department prepared an offense report in this matter on November 1, 1995. According to DHS records, the victim was referred to DHS on December 29, 1995, and sent to Greeneville Women's Clinic for a medical examination on January 10, 1996. The records indicated that a Child Protective Investigative Team believed that an incident occurred but that the perpetrator was "unfounded." The records further indicated that the team was unable to interview the alleged perpetrator because he moved to North Carolina before an interview could be completed.

On April 26, 2007, the Defendant voluntarily appeared at the Hawkins County Sheriff's Department and gave a statement to Detective Randall Collier about an incident with the victim in 1995. In his statement, the

Defendant said that one day when he lived in a trailer in the Cloud 9 area, he took the victim into a bedroom, removed her clothes, and started kissing and licking her vagina. He said that this went on for a couple of minutes and that his son, Thomas, walked in.

The following day, the Defendant gave a statement to Detective Cliff Evans of the Hawkins County Sheriff's Department, in the presence of Detective Jeff Greer. In that statement, the Defendant said that his wife's nieces had made allegations against him but that he did not remember having done anything to them. He stated that the only child he could remember doing anything to was his daughter, S.M., in Hawkins County. The Defendant admitted that he had a "serious problem" when it came to little girls.

The Defendant testified that in late 1995 or early 1996, he went to North Carolina to see his brother and "was pulled over while driving on a revoked, and . . . was stranded there" for approximately three years. His going to North Carolina had nothing to do with the victim's allegations. The Defendant admitted meeting with the various detectives but said, "I never said anything. Everything was written up and I just signed it, and that was done under duress." The Defendant denied ever touching the victim's private parts or kicking his son out the door of his trailer. On cross-examination, the Defendant denied having a fascination with young girls.

The jury found the Defendant guilty of the charged offenses of rape of a child and incest. The jury found that the following enhancement factors in effect at the time were applicable: the personal injuries inflicted upon the victim were particularly great, T.C.A. § 40-35-114(6) (Supp. 2004); the offense involved a victim and was committed to gratify the Defendant's desire for pleasure or excitement, id. § 40-35-114(7); and the Defendant abused a position of private trust. Id. § 40-35-114(15). The jury did not find any mitigating factors applicable.

At the sentencing hearing, the State urged the court to sentence the Defendant as a multiple offender and introduced certified copies of two judgments from Bradford County, Florida, a 1983 conviction for lewd assault and a 1984 conviction for attempted lewd assault. Acknowledging that Tennessee does not have the felonies of lewd assault or attempted lewd assault, the court looked at the elements listed in the indictments and determined that the offenses were the equivalent of aggravated sexual battery and attempted aggravated sexual battery. The court determined that the

Defendant qualified as a multiple offender and sentenced him as such to forty years for the rape of a child conviction and to ten years for the incest conviction.

Daniel Ross McClellan, 2010 WL 2695657, at *1-2 (footnote omitted).

McClellan appealed, challenging his classification as a Range II, multiple offender for sentencing purposes. Id. at *2. This court agreed with McClellan that the trial court erred in equating McClellan's prior convictions in Florida with Tennessee offenses as they existed at the time of sentencing rather than at the time of the prior convictions. Id. at *4. We then determined that the State failed to prove beyond a reasonable doubt the necessary prior convictions to sentence McClellan as a multiple offender for the rape of a child. Id. We affirmed McClellan's ten-year sentence for incest, but we remanded the case to the trial court for resentencing as a Range I offender on the conviction of rape of a child. Id. at *5.

At the sentencing hearing on remand, the trial court did not hear evidence from the parties. The trial court said that he agreed with the jury's previous findings regarding enhancement and mitigating factors and sentenced McClellan to twenty-five years, the statutory maximum for a Range I offender. This timely appeal followed.

**Analysis.** On appeal, McClellan argues that the trial court erred in submitting the enhancement factors to the jury "without any instruction regarding their definition, their application, or the State's burden of proof." He asserts that this is a violation of his constitutional right, as recognized in Blakely v. Washington, 542 U.S. 296 (2004), to a jury trial. Additionally he argues that the trial court did not properly weigh the enhancement factors in determining McClellan's sentence and that the State's failure to allege the enhancement factors in the indictment precluded the trial court from considering them in sentencing. As a result of the trial court's errors, according to McClellan, he should receive the presumptive sentence for his offense. The State concedes that the trial court's errors in submitting the enhancement factors to the jury violated McClellan's right to a jury trial and that the trial court should not have considered those enhancement factors. Despite this error, the State argues that a sentence of twenty-five years is appropriate on de novo review based on McClellan's two prior felony convictions. For the reasons that follow, we agree.

The standard of review for challenges to the length and manner of service of a sentence is de novo upon the record with a presumption of correctness as to the trial court's determination. T.C.A. § 40-35-401(d) (2006). However, the presumption of correctness does not apply when the appealing party demonstrates that the trial court failed to affirmatively consider the sentencing principles and all relevant facts and circumstances. State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). The presumption also does not apply

when "the trial court applies inappropriate mitigating and/or enhancement factors." State v. Carter, 254 S.W.3d 335, 345 (Tenn. 2008) (citing State v. Shelton, 854 S.W.2d 116, 123 (Tenn. Crim. App. 1992)). Only upon such a showing will our review become purely de novo. Id.

Here, the State concedes that the trial court applied enhancement factors improperly determined by the jury. We therefore review the issue of the appropriate length of McClellan's sentence de novo without a presumption of correctness. In our de novo review, we must consider (1) the evidence, if any, received at the trial and sentencing hearing, (2) the presentence report, (3) the principles of sentencing and arguments as to sentencing alternatives, (4) the nature and characteristics of the criminal conduct, (5) any mitigating or statutory enhancement factors, (6) any statement that the defendant made on his own behalf, (7) any statistical information as to sentencing practices for similar offenses in the state, and (8) the potential for rehabilitation with treatment. T.C.A. §§ 40-35-102, -103, -210 (2006); see Ashby, 823 S.W.2d at 168 (citing State v. Moss, 727 S.W.2d 229, 236-37 (Tenn. 1986)).

Although McClellan committed this offense in 1995, he was not sentenced until 2009. Absent a waiver of constitutional ex post facto protections, McClellan must be sentenced according to the laws in effect at the time of his offense. T.C.A. § 39-11-112 (2006) (providing that an offense "shall be prosecuted under the act or statute in effect at the time of the commission of the offense"); see, e.g., State v. Hester, 324 S.W.3d 1, 69 (Tenn. 2010) (discussing absence of waiver and sentencing under statutes in effect at time of offense). Because no such waiver appears in the record, McClellan's sentence is governed by the Sentencing Act in effect in 1995.

The Sentencing Act in effect at the time of McClellan's offense required the trial court, after ascertaining the relevant range, to begin its determination of the appropriate sentence with a "presumptive sentence." T.C.A. § 40-35-210(c) (1994). After the trial court established the presumptive sentence, the court was required to enhance the sentence within the appropriate range based on the existence of the relevant enhancement factors and was required to decrease the sentence based on the existence of the relevant mitigating factors. Id. § 40-35-210(d), (e). The trial court was granted discretion in determining the weight given to any enhancement or mitigating factor as long as the trial court followed the provisions of the Sentencing Act and supported its findings by the record. State v. Souder, 105 S.W.3d 602, 606 (Tenn. Crim. App. 2002). The only limitation on the trial court's discretion was that the enhancement factors (1) must be "appropriate for the offense" and (2) not "essential elements of the offense." T.C.A. § 40-35-114 (1994). However, rulings by the United States Supreme Court and Tennessee Supreme Court later made clear that "enhancement based on judicially determined facts other than the fact of a prior conviction . . . violated the Sixth Amendment [right to a jury trial]." State v. Gomez, 239 S.W.3d 733,

740 (Tenn. 2007); see Blakely, 542 U.S. at 303 ("'Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt.'" (quoting Apprendi v. New Jersey, 530 U.S. 466, 490 (2000))).

We begin, as required under section 40-35-210(c), by determining the presumptive sentence for the rape of a child, a Class A felony. T.C.A. § 39-13-522(b) (1994). McClellan is to be sentenced as a Range I offender. See Daniel Ross McClellan, 2010 WL 2695657, at *4. A Class A felony carries a Range I penalty of fifteen to twenty-five years. T.C.A. § 40-35-112(a)(1) (1994). Prior to an amendment in 1995, Tennessee Code Annotated section 40-35-210 provided the presumptive sentence for a Class A felony as the minimum within the range or fifteen years. Id. § 40-35-210(c). However, effective July 1, 1995, the presumptive minimum sentence for a Class A felony under Tennessee Code Annotated section 40-35-210 became the mid-point in the range or twenty years. Act of June 12, 1995, ch. 493, 1995 Tenn. Pub. Acts 876 (amending section 40-35-210).

As with many sexual offenses, the instant indictment does not specify an exact date for the offense and alleges that the offense occurred "on or about between __ day of May 1995 and __ day of December 1995[.]" This is significant to our analysis because it encompasses an offense period both before and after the effective date of the 1995 amendment. McClellan maintains that the pre-amendment law or a presumptive sentence of fifteen years applies because "neither the indictment nor the jury verdict specifies whether [his] offense occurred before or after the effective date" of the amendment. He further insists that "nothing else in the record narrows the date range[.]" The State asserts, without argument, that the presumptive minimum of twenty years under the amended version of the sentencing act applies.

As previously discussed, the indictment in this case does not specify the exact day that the offense occurred. However, the victim and her brother testified that the offense occurred while visiting McClellan at his trailer located behind Cloud 9. McClellan further testified that he moved into that trailer "a few months" after May 1995. Albeit a close question, this evidence is sufficient to establish that the offense of conviction occurred sometime after July 1, 1995. See State v. Brian Keith Gilmer, No. E2001-01474-CCA-R3-CD 2002 WL 1343230 at *3 (Tenn. Crim. App. June 20, 2002); cf. State v. Joseph S. Lucas, Jr., No. M2007-01411-CCA-R3-CD, 2008 WL 4368241, at *1, 4 (Tenn. Crim. App., at Nashville, Sept. 26, 2008) (where indictment alleged that offense occurred between May and September 2005, relying on the defendant's statement that the offense occurred during "'[t]he last part of the summer' of 2005" to establish that the sentencing act which became effective on June 7, 2005, applied), perm. to app. denied (Tenn. Mar. 16, 2009). McClellan's presumptive sentence, therefore, is twenty years.

Further review of the record establishes one enhancement factor and no mitigating factors. McClellan "has a previous history of criminal convictions or criminal behavior in addition to those necessary to establish the appropriate range." T.C.A. § 40-35-114(1) (1994). The record includes judgment forms of two prior convictions in Florida, one in 1983 for lewd assault and one in 1984 for attempted lewd assault. Notably, these crimes are similar to the instant offense of rape of a child in that they involve sexual offenses committed against a minor victim. See Fla. Stat. Ann. § 800.04 (1979) (proscribing the "handl[ing], fondl[ing], or mak[ing] an assault upon any child under the age of 14 years in a lewd, lascivious, or indecent manner, or . . . knowingly commit[ting] any lewd or lascivious act in the presence of such a child"); T.C.A. § 39-13-522(b) (1994) (proscribing the "unlawful sexual penetration of a victim . . . if such a victim is less than thirteen years of age"). McClellan's prior convictions for similar offenses merit considerable weight. See, e.g., State v. James Paul Kinard, No. M2008-02840-CCA-R3-CD, 2010 WL 2160347, at *8 (Tenn. Crim. App., at Nashville, May 28, 2010) (considering weight given to prior conviction involving a sexual offense against a child in sentencing defendant for rape of child and concluding that "[t]he presence of a prior conviction similar in nature to the underlying conviction was sufficient for the trial court to set the sentence at the maximum in the range"), perm. to app. denied (Tenn. Dec. 7, 2010); State v. Barry Singleton, No. W2006-02476-CCA-R3-CD, 2009 WL 1161782, at *7 (Tenn. Crim. App., at Jackson, Apr. 29, 2009) (similar); State v. Donald Steve Sikes, No. W2000-02960-CCA-R3-CD, 2001 WL 1042172, at *7 (Tenn. Crim. App., at Jackson, Sept. 6, 2001) (approving of the "heavy weight" assigned to defendant's prior conviction for DUI in sentencing for offenses that included unlawful possession of a handgun while under the influence).

McClellan argues that his prior convictions cannot be considered in enhancing his sentence because it is not possible to precisely translate them into Tennessee analogs. He further asserts that this inability to translate the prior convictions precludes any weighing of the offenses under our de novo review. This argument is misplaced. A court must be able to translate a prior out-of-state conviction into a Tennessee analog when it determines the classification of the prior offense and, thereby, the appropriate sentencing range for the defendant. T.C.A. § 40-35-106(a)(1), (b)(5) (1994); see also Daniel Ross McClellan, 2010 WL 2695657, at *3-4. However, such a translation is not necessary when a court determines the appropriate sentence within a particular sentencing range, the task we undertake here. See T.C.A. § 40-35-114(1) (allowing consideration of "previous history of criminal convictions" as an enhancement factor); T.C.A. § 40-35-210 (delineating process for determining sentence).

McClellan also asserts that the State waived any reliance on his prior convictions as an enhancement factor because it did not raise it before the trial court on remand. This argument is similarly misplaced. The Tennessee Supreme Court has held that our de novo

review of sentencing issues permits consideration of enhancement factors on which the trial court and the State did not rely, as long as the factors are "appropriate for the offense and established in the record." State v. Winfield, 23 S.W.3d 279, 283-84 (Tenn. 2000) (citing State v. Pearson, 858 S.W.2d 879, 885 (Tenn. 1993) (upholding this court's "application of an enhancement factor not relied upon by the State or applied by the trial court")).[1]

In mitigation, McClellan argues that his "criminal conduct neither caused nor threatened serious bodily injury." T.C.A. § 40-35-113(1) (1994). We conclude that the record does not support mitigation in this regard. The Supreme Court of Tennessee has noted that "[e]very rape or sexual battery offense is physically and mentally injurious to the victim." State v. Kissinger, 922 S.W.2d 482, 486 (Tenn. 1996). Furthermore, this court has stated, "It is difficult to conceive of any factual situation where the rape of a child would not threaten serious bodily injury." State v. Edward Earl Huddleston, No. 02C01-9706-CC-00228, 1998 WL 67684, at *3 (Tenn. Crim. App., at Jackson, Feb. 20, 1998), perm. to app. denied (Tenn. Oct. 19, 1998). Importantly, "serious bodily injury" includes an aspect of mental impairment. T.C.A. § 39-11-106(33)(E) (defining "serious bodily injury" to include "protracted loss or substantial impairment of a function of a . . . mental faculty"). Because the rape of a such a young child necessarily involves mental suffering–or at least a threat of such–within the meaning of "serious bodily injury," State v. John Ray Thompson, No. M2003-00487-CCA-R3-CD, 2004 WL 2964704, at *19 (Tenn. Crim. App., at Nashville, Dec. 20, 2004); State v. Scott Bradley Price, No. E2000-00441-CCA-R3CD, 2001 WL 1464555, at *2 (Tenn. Crim. App., at Knoxville, Nov. 19, 2001); Edward Earl Huddleston, 1998 WL 67684, at *3, this mitigating factor is inapplicable to McClellan's offense.

McClellan also asserts that his expression of remorse over the offense and his stable work history and work ethic justify mitigation as "other factor[s] consistent with the purposes of [sentencing]." T.C.A. § 40-35-113(13) (1994). McClellan argues that he expressed remorse when he told police in a written statement, "I have regret over what happen [sic] with [the victim]." However, McClellan also acknowledges that he testified at trial that the police statement, and thereby this expression of remorse, were not true and that he signed the statement under duress. As a result, we conclude that the record does not support mitigation based on an expression of remorse.

Regarding McClellan's work history and work ethic, he relies on his trial testimony in which he stated:

And the rest of the time all I done was work. Everywhere I've gone I've worked. I've worked from daylight until 5:00 in the afternoon. That's

---

[1]We note that we also consider mitigating factors that McClellan did not argue before the trial court.

continually . . . . Everywhere I've worked – It's from Erwins, Diamonds, all the way over to Burnette's Produce in Morristown.

Additionally, the presentence report states, "Mr. McClellan reports he worked as a landscaper for Ronnie James. The defendant gave no additional information regarding his employment history." Although a good work history can serve to mitigate a defendant's sentence, see State v. Kelley, 34 S.W.3d 471, 483 (Tenn. Crim. App. 2000), the record here does not sufficiently establish this mitigator to warrant its application. See id. (declining to mitigate based on work history when the record lacked significant information, including "job performance, length of service, or his reasons for leaving any of these jobs").

The presentence report in this case indicates that McClellan was forty-two years old and married at the time of his first sentencing. He attended school through the tenth grade and stated that he had received a GED. McClellan also stated that he had a history of alcohol use and began drinking at age fourteen or fifteen. He made no statement on his own behalf at either of the sentencing hearings.

Having examined the record and the relevant considerations under the Sentencing Act, we conclude that an appropriate sentence under the circumstances is twenty-five years. McClellan's prior convictions for similar offenses weigh heavily in this decision. They demonstrate not only the need to protect society from McClellan, T.C.A. § 40-35-103(1) (1994), but also the lack of potential for rehabilitation, id. § 40-35-103(5). McClellan's statement to police that he has a "serious problem" with young girls further demonstrates the danger he poses. The record supports no mitigating factors that would decrease McClellan's sentence. Accordingly, McClellan's sentence for rape of a child is twenty-five years.

Finally, we note that the judgment forms in this case contain clerical errors. We remand to the trial court for entry of corrected judgments to reflect the offense date, consistent with the indictments, of "between __ day of May 1995 and __ day of December 1995." Additionally, the indictment filing date on the judgment forms should be corrected to reflect the date of the supersede as indictments on which McClellan was convicted, October 1, 2008. See Tenn. R. Crim. P. 36.

## CONCLUSION

Upon review, McClellan's sentence of twenty-five years is affirmed. We remand for entry of a judgment consistent with our opinion and correction of clerical errors in the judgment forms.

_____
CAMILLE R. McMULLEN, JUDGE